## GAUSSEN *v.* UNITED STATES.

1. The United States, in asserting its rights, is not barred by the laches of its officers or agents.

2. Duties imposed upon an officer, different in their nature from those which he was required to perform at the time his official bond was executed, do not render it void as an undertaking for the faithful performance of those which he at first assumed. It will still remain a binding obligation for what it was originally given to secure.

3. The twenty-first section of the act of Congress of March 2, 1799 (1 Stat. 644), makes it the duty of collectors of customs "to pay to the order of the officer, who shall be authorized to direct the payment thereof, the whole of the moneys which they may respectively receive" by virtue of that act. *Held*, that payments and disbursements of moneys received in his official capacity, if made by direction of the Secretary of the Treasury, are within the range of the duty of a collector of customs.

ERROR to the Circuit Court of the United States for the District of Louisiana.

This is an action by the United States against Bessie Elgee Gaussen, executrix of John K. Elgee, deceased, who was one of the sureties on the official bond of Thomas Barrett, collector of the customs for the district of New Orleans, in the State of Louisiana. It was before this court at its October Term, 1873, when the judgment of the Circuit Court was reversed and the case remanded for a new trial. *United States* v. *Gaussen*, 19 Wall. 198. The mandate was filed in the court below, Jan. 27, 1875. The bond sued on bears date July 6, 1844, and is conditioned as follows: "Now, therefore, if the said Thomas Barrett has truly and faithfully executed and discharged, and shall continue truly and faithfully to execute and discharge, all the duties of the said office, according to law, then the above obliga-

tion to be void and of none effect; otherwise, it shall abide and remain in full force and virtue."

The United States claimed that the various adjustments of Barrett's accounts by the accounting officers of the Treasury, from July 25, 1844, to Oct. 12, 1845, showed a balance due by him of $41,376.64, and that his failure to account for and pay over that amount, received by him in his official capacity, constituted a breach of the condition of his bond. The defendant answered, —

1. By a general denial.

2. [" That if the bond sued on was ever executed, delivered, and took effect, which is not admitted, then defendant avers that said bond, after its execution, was rendered void and null, so far as said decedent was concerned, for this, that subsequent to its date and during the period of the term of office of Thomas Barrett, as collector of the port of New Orleans, the United States imposed on and exacted of him the performance of duties and the assumption of responsibilities in regard to the receipt, custody, and disbursement of the moneys received in his said capacity as collector aforesaid, different and variant from those duties and responsibilities in that regard legally incumbent upon him as collector aforesaid, at the date of said bond, under the law then existing and in force; that during his said term of office said Barrett was dispensed by the United States from his duty and obligation of paying certain moneys, received by him in his said capacity, to the United States, in the mode required by law, and in lieu thereof was required by the United States to expend and disburse, and under its orders he did actually expend and disburse, during his said official term, a large portion of said moneys, by payments made to collectors and surveyors of other collection districts, and to various other officers of the government; that said Barrett was required by the United States to expend and disburse, and he did, in accordance with its orders, expend and disburse, during his said official term, a large portion of said moneys for the construction of the new marine hospital, and for the maintenance and supply of existing hospitals and light-houses, and of vessels of the revenue and naval service, and for other purposes entirely beyond the scope of his duties as collector aforesaid, and as fixed and defined by law;

that said Barrett was required by the United States, in his said capacity as collector aforesaid, to receive and disburse, and did actually during his said official term receive and disburse, under its said requirements, large sums of money which he was not required by law to receive and disburse in his said capacity as collector; — all of which appears by the account filed by the plaintiff herein. And defendant charges that the duties and risks and responsibilities of said Barrett as collector aforesaid, without the consent of said decedent, were varied, enlarged, and changed by the United States, subsequent to the date of said bond and during his official term, whereby the liability of said decedent as surety on said bond, if ever it existed, was avoided and discharged.

3. " That the said Thomas Barrett departed this life about the year 1846, in New Orleans, having a large real and personal estate, consisting in property and assets, more than sufficient to pay the amount of plaintiff's demand; that if the United States had a valid claim against said Barrett, it had the right of priority of payment on such property and assets, which it neglected to enforce, and lost; that upon said bond are signatures which purport to be those of François Delery, Sylvain Peyroux, Lucien Hermann, M. B. Cantrelle; that all of said parties are dead; that each died leaving a large and valuable estate, more than enough to pay the amount claimed in this suit; that if the United States had a valid claim against said Barrett and said François Delery, Sylvain Peyroux, Lucien Hermann, and M. B. Cantrelle, it had the right of priority of payment of said demand out of each and all of said estates, which it neglected to enforce, and lost, whereby the liability of said J. K. Elgee, if it ever existed, was discharged."]

The court, on motion of the United States, ordered that the part of said answer which is included within brackets be struck out, on the ground that, if true, it was insufficient, as pleaded, to bar the action.

The defendant requested the court to give the following instructions in relation to matters which the evidence tended to establish: —

1. " That if the jury find from the evidence that the Secretary of the Treasury required the said Barrett, while collector,

to use the moneys received by him as collector, in the redemption of treasury notes of the United States, that such requirement was an important and material change of the duties, functions, and employment of the said Barrett as collector, as regulated by law, and, whenever made, discharged the sureties on his official bond from all liability for his subsequent official conduct."

2. "That while Barrett, the principal in the bond sued on, held the office of collector, no law imposed on him the duty of making disbursements for any marine hospital or for the light-houses or revenue-cutters, and that such duties and disbursements were extra-official as to the office of collector, and that the sureties on the bond sued on are not responsible for any fault, neglect, or misconduct of the said Barrett in respect to such extra-official disbursements; and if the jury find from the evidence that said Barrett, while he held said office, was employed by the superior officers of the department to make disbursements for the marine hospital, light-houses, and revenue-cutters, and that the said Barrett was furnished money directly from the treasury of the United States, or from other sources than the proper receipts and collections of the office of collector, that, in order to charge the defendant with the money thus furnished, or any part thereof, it is incumbent on the plaintiff to prove that the money thus furnished, or such part thereof, was necessary to cover the disbursements proper to the office of collector, or was furnished for that purpose."

3. "That if the jury find from the evidence that the Secretary of the Treasury caused to be remitted to Thomas Barrett, while collector, money out of the treasury of the United States, and employed him as disbursing officer of the government in defraying the expenses of the light-house service, of the erection of the marine hospital at New Orleans, and in other matters not connected with his official duties as collector, as regulated by law, and extra-official as respects the office of collector, and in the accounts between the government and the said Barrett, filed with the petition, there are mixed and blended together on the debit side of the account against said Barrett the moneys received by him officially for duties on imports and from other sources from which he was by law

authorized to collect, and moneys remitted to him directly out of the treasury of the United States; [that, in order to recover the balance brought down in the present action, it is incumbent on the government to prove to the satisfaction of the jury that the said balance brought down resulted from the failure of the said Barrett to account for the funds which came into his hands, as collector, and within the scope of his official duties in that office, and his failure to perform his duty in respect to such funds, and not from his failure to account for funds received from the treasury for extra-official purposes, and his failure to perform his duty in respect to such funds."]

These instructions the court refused to give, except so much of the last as is embraced within brackets. The defendant excepted.

There was a verdict for the plaintiff for $36,815.86, with interest thereon from Oct. 12, 1845; and judgment having been rendered thereon, the defendant sued out this writ, and here assigns error as follows: —

The court below erred, —

1. In striking out parts of the answer of the defendant.

2. In refusing the defendant's first request.

3. In refusing the defendant's second request.

4. In refusing the defendant's third request.

*Mr. William D. Shipman* and *Mr. William W. MacFarland* for the plaintiff in error.

The contract of a surety is *strictissimi juris*, and cannot be extended by implication beyond the fair terms of his engagement. *Ludlow* v. *Simonds*, 2 Cai. (N. Y.) Cas. 1; *United States* v. *Tillotson*, 1 Paine, 305; *Miller* v. *Stewart*, 9 Wheat. 680. The fact that the United States is the obligee of the bond does not change the rule applicable to his contract. *United States* v. *Kirkpatrick*, id. 720. Therefore the English doctrine, that prerogative overrides all equities, has no place in American jurisprudence.

Ordinarily, the acts of a private person or a corporation, obligee of a bond conditioned for the faithful performance of a duty, which discharge the surety, will equally discharge him where they are done by the United States under the same circumstances. *United States* v. *Hillegas*, 3 Wash. 70;

*United States* v. *Kirkpatrick, supra ; United States* v. *Tillotson, supra.*

The answer of the defendant below, which was struck out by the court, was competent, under the rules of pleading prevailing in Louisiana. *Lawson et ux.* v. *Ripley*, 17 La. 238; *Frierson* v. *Irwin*, 5 La. Ann. 531; *Waterman* v. *Gibson*, id. 673; *Ralston* v. *Barclay et al.*, 6 Mart. (La.) 649; *Ory* v. *Winter*, 4 Mart. (La.) N. S. 277 ; *Tracy* v. *Tuyes et al.*, id. 354.

The court should have charged the jury as requested in the defendant's first prayer. If the new duty imposed by the Secretary of the Treasury upon the collector, to apply the moneys received by him in the redemption of treasury notes, had been inserted in the bond without the consent of the surety, the latter would have been discharged from all liability. *Miller* v. *Stewart, supra.*

A new and important change was thereby made in the duties of the office not contemplated by the parties to the bond when they executed it.

The refusal to give the instructions set forth in the second request was error. *Dedham Bank* v. *Chickering*, 4 Pick. (Mass.) 314; *Legh* v. *Taylor*, 7 Barn. & Cress. 491; *United States* v. *Powell*, 14 Wall. 493; *United States* v. *Singer*, 15 id. 111; *Converse* v. *United States*, 21 How. 463.

If any part of the third request was proper, the whole was. The learned judge virtually admitted the legal correctness of the propositions embodied in the request, by charging the conclusion which they embrace; but he rejected the premises inseparably connected therewith, which furnished the only subject-matter to which the jury could intelligently apply that conclusion.

*The Solicitor-General, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

This suit was founded upon the bond of a collector of customs, the condition of which is that he had truly executed and discharged, and should continue to execute and discharge, all the duties of the office of collector according to law; and the breach assigned was that he had failed to account for and pay over the money received by him in his official capacity as col-

lector.  The defendant's testator was a surety in the bond; but that is an immaterial fact in the case, for nothing is plainer than the rule that a surety in a bond is liable to the same extent to which his principal is liable, by force of the bond.

A general denial having been interposed to the plaintiff's petition, the defendant added two special pleas, which, upon motion, the Circuit Court ordered to be stricken out, and this order is now assigned as error.  An examination of the pleas stricken out, however, satisfies us that they were plainly impertinent.  They aver nothing that constitutes either a total or even a partial defence.  The second alleges, in effect, laches on the part of the government, in failing to assert its claim against other sureties in the bond, whereby, it is averred, the liability of defendant's testator, if it ever existed, was discharged.  But laches of the officers or agents of the government is confessedly no bar to the assertion of its rights.  This is admitted by the plaintiff in error, and it has not been contended in argument, as it could not have been successfully, that delay or neglect in prosecuting its claims against the co-sureties of the defendant's testator is any bar to this suit.

The first special plea [1] requires a more minute examination.  It was, in effect, that the obligation of the bond had been discharged, not directly, but because the principal obligor had been required to perform, and had performed, duties additional to those which pertained by law to his office when the bond was made.  It does not aver that the additional duties changed the character of the office, or increased the responsibility of the collector for the money received by him as collector of customs.  How, then, the requisition of duties not inconsistent with accounting for and paying over money received by him as collector of customs can operate to release his bond is quite incomprehensible.  If it be conceded, as it may be, that the addition of duties different in their nature from those which belonged to the office when the official bond was given will not impose upon an obligor in the bond, as such, additional responsibilities, it is undoubtedly true that such an addition of new duties does not render void the bond of the officer as a security for the performance of the duties at first assumed.  It will still

[1] *Supra,* p. 585.

remain a security for what it was originally given to secure. And it is noticeable that most of the allegations in the plea of extra-official expenditures and disbursements required of the collector (for example, payments to other collectors and sur- veyors of other collection districts, payments to other government officers, payments for the construction of a new marine hospital, and for the maintenance and supply of existing hospitals and light-houses and vessels of the revenue and naval service), are averments of conduct and requirements which the collector was under legal obligations to observe and obey when the bond in suit was made. The act of Congress of March 2, 1799, c. 2, sect. 21 (1 Stat. 644), made it the duty of collectors to "pay to the order of the officer who shall be authorized to direct the payment thereof, the whole of the moneys which they may respectively receive" by virtue of the act. All payments and disbursements of money received by the collector in his official capacity, if made as charged in the plea, by direction of the government, were, therefore, strictly within the range of his official duty.

The remaining reason given by the plea in support of the averment that the bond had been avoided is, that the collector was, during his official term, required to receive and disburse large sums of money which the law did not require him to receive and disburse as collector, as appeared by the official accounts filed by the plaintiff in the suit. But how that fact, if it was a fact, could operate, even in favor of a surety, to release him from the obligation of the official bond, we find ourselves unable to perceive. Such an effect has not been claimed in the argument for the plaintiff in error. It is doubtless true that neither the surety nor his principal is responsible, by virtue of the bond, for money which the collector received, not as collector, — money which his office did not require him to receive or disburse; but this suit was brought to enforce no such responsibility. The surety may not be liable for a failure of his principal to account for such money; yet if he is not, it does not follow that he is not bound by his bond to respond for his principal's default to account for money received in his official character. Requiring a person who is a collector of customs to receive a sum of money and apply it in discharge of

some liability of the government entirely outside of his ordinary employment, for example, to pay debentures, may impose a new duty upon him, but it leaves his office, as collector, untouched and his accountability in it unimpaired. This is quite consistent with the doctrine which we admit, that if, after an official bond has been signed, the nature of the office be changed by law, the bond ceases to be obligatory. In such a case the office is no longer the same, within the meaning of the bond. *Converse* v. *United States*, 21 How. 463.

It follows from these considerations that neither of the special pleas set up any thing which amounted to a defence to the action. The facts averred exhibited no discharge of the defendant's testator from the obligation of the bond, nor did they tend to show that he was not responsible for the collector's neglect to account for and pay over whatever money he had received as collector. There was no error, therefore, in striking out the pleas as impertinent, and in refusing to receive evidence to support them.

Holding this opinion, we are not called upon to inquire whether the money received and disbursed by the collector, " as appearing by the official accounts filed by the plaintiff in the suit," was all money which it was his duty to receive and disburse as collector. And we are not to be understood as assenting to the claim that some part of it was not. On this subject see *Broome* v. *The United States*, 15 How. 143.

The next assignment of error requiring attention is, that the court refused to charge the jury, if they found from the evidence the Secretary of the Treasury required the collector to use the money received by him in the redemption of treasury notes, that such requirement was an important and material change of the duties, functions, and employment of the collector as required by law, and discharged the sureties in his official bond from all liability for his subsequent official misconduct.

Enough has already been said to show that such a charge should not have been given. By the act of 1799, to which we have referred, it was made the official duty of the collector to pay the public money in his hands to the order, or according to the direction of the officer authorized to direct the payment thereof. Payment of treasury notes, therefore, in pursuance

of the order of the Secretary, was directly in the line of the collector's duty as such an officer.

The same remarks are applicable to the refusal of the court to affirm the second point proposed by the defendant as instruction to the jury. It would have been error had such instruction been given. While it may be true that no law specifically imposed upon the collector the duty of making disbursements for any marine hospital, or for the light-houses or revenue-cutters, it is not true that such duties " were extra-official as to the office of collector," if the payments were ordered by the Secretary of the Treasury; for the collector was bound to pay to his order, as we have seen. Nor could the court have affirmed that money furnished to the collector from the treasury of the United States, or from sources other than the proper receipts and collections, must be shown by the plaintiff to have been necessary to cover the disbursements proper to the office of the collector, or that it was furnished for that purpose. As the law was when the bond was executed, the government was authorized to furnish money to collectors for certain purposes, on their requisition. But apart from this, when the proposition was submitted to the court, the treasury transcript was in evidence. By law it made out a *prima facie* case, and the burden of proof, instead of being upon the plaintiff, was on the defendant to disprove it. Besides, it was proven by the transcript, and by the accounts furnished to the department by the collector, that the money he had received from other sources than collection of customs had all been expended in the payment of debentures, with the sanction of the Treasury Department. To this there was no contradictory evidence. The point proposed by the defendant was, therefore, wholly inapplicable to the case.

The remaining assignment is that the court refused to affirm the third point in the words in which it was proposed. But the court did affirm it in substance, and even more broadly than it was presented. The court charged the jury, " that, in order to recover the balance brought down in the present action, it is incumbent on the government to prove, to the satisfaction of the jury, that the said balance brought down resulted from the failure of the said Barrett (the collector) to

account for the funds which came into his hands as collector, and within the scope of his official duties in that office, and his failure to perform his duty in respect to such funds, and not from his failure to account for funds received from the treasury for the extra-judicial purposes, and his failure to perform his duty in respect to such funds." This was an unqualified direction, not dependent upon what the jury might believe to be proved by the evidence. It was, therefore, more than the defendant asked.

The case requires nothing further. The plaintiff has recovered a judgment for the sum which the principal obligor in the bond admitted to be due from him as collector. The judgment includes nothing except an unpaid balance of duties collected, and we discover no error in the trial.

*Judgment affirmed.*