97 U.S. 584 (____)
GAUSSEN
v.
UNITED STATES.
Supreme Court of United States.

*588 Mr. William D. Shipman and Mr. William W. MacFarland for the plaintiff in error.
The Solicitor-General, contra.
*589 MR. JUSTICE STRONG delivered the opinion of the court.
This suit was founded upon the bond of a collector of customs, the condition of which is that he had truly executed and discharged, and should continue to execute and discharge, all the duties of the office of collector according to law; and the breach assigned was that he had failed to account for and pay over the money received by him in his official capacity as collector. *590 The defendant's testator was a surety in the bond; but that is an immaterial fact in the case, for nothing is plainer than the rule that a surety in a bond is liable to the same extent to which his principal is liable, by force of the bond.
A general denial having been interposed to the plaintiff's petition, the defendant added two special pleas, which, upon motion, the Circuit Court ordered to be stricken out, and this order is now assigned as error. An examination of the pleas stricken out, however, satisfies us that they were plainly impertinent. They aver nothing that constitutes either a total or even a partial defence. The second alleges, in effect, laches on the part of the government, in failing to assert its claim against other sureties in the bond, whereby, it is averred, the liability of defendant's testator, if it ever existed, was discharged. But laches of the officers or agents of the government is confessedly no bar to the assertion of its rights. This is admitted by the plaintiff in error, and it has not been contended in argument, as it could not have been successfully, that delay or neglect in prosecuting its claims against the co-sureties of the defendant's testator is any bar to this suit.
The first special plea[1] requires a more minute examination. It was, in effect, that the obligation of the bond had been discharged, not directly, but because the principal obligor had been required to perform, and had performed, duties additional to those which pertained by law to his office when the bond was made. It does not aver that the additional duties changed the character of the office, or increased the responsibility of the collector for the money received by him as collector of customs. How, then, the requisition of duties not inconsistent with accounting for and paying over money received by him as collector of customs can operate to release his bond is quite incomprehensible. If it be conceded, as it may be, that the addition of duties different in their nature from those which belonged to the office when the official bond was given will not impose upon an obligor in the bond, as such, additional responsibilities, it is undoubtedly true that such an addition of new duties does not render void the bond of the officer as a security for the performance of the duties at first assumed. It will still *591 remain a security for what it was originally given to secure. And it is noticeable that most of the allegations in the plea of extra-official expenditures and disbursements required of the collector (for example, payments to other collectors and surveyors of other collection districts, payments to other government officers, payments for the construction of a new marine hospital, and for the maintenance and supply of existing hospitals and light-houses and vessels of the revenue and naval service), are averments of conduct and requirements which the collector was under legal obligations to observe and obey when the bond in suit was made. The act of Congress of March 2, 1799, c. 2, sect. 21 (1 Stat. 644), made it the duty of collectors to "pay to the order of the officer who shall be authorized to direct the payment thereof, the whole of the moneys which they may respectively receive" by virtue of the act. All payments and disbursements of money received by the collector in his official capacity, if made as charged in the plea, by direction of the government, were, therefore, strictly within the range of his official duty.
The remaining reason given by the plea in support of the averment that the bond had been avoided is, that the collector was, during his official term, required to receive and disburse large sums of money which the law did not require him to receive and disburse as collector, as appeared by the official accounts filed by the plaintiff in the suit. But how that fact, if it was a fact, could operate, even in favor of a surety, to release him from the obligation of the official bond, we find ourselves unable to perceive. Such an effect has not been claimed in the argument for the plaintiff in error. It is doubtless true that neither the surety nor his principal is responsible, by virtue of the bond, for money which the collector received, not as collector,  money which his office did not require him to receive or disburse; but this suit was brought to enforce no such responsibility. The surety may not be liable for a failure of his principal to account for such money; yet if he is not, it does not follow that he is not bound by his bond to respond for his principal's default to account for money received in his official character. Requiring a person who is a collector of customs to receive a sum of money and apply it in discharge of *592 some liability of the government entirely outside of his ordinary employment, for example, to pay debentures, may impose a new duty upon him, but it leaves his office, as collector, untouched and his accountability in it unimpaired. This is quite consistent with the doctrine which we admit, that if, after an official bond has been signed, the nature of the office be changed by law, the bond ceases to be obligatory. In such a case the office is no longer the same, within the meaning of the bond. Converse v. United States, 21 How. 463.
It follows from these considerations that neither of the special pleas set up any thing which amounted to a defence to the action. The facts averred exhibited no discharge of the defendant's testator from the obligation of the bond, nor did they tend to show that he was not responsible for the collector's neglect to account for and pay over whatever money he had received as collector. There was no error, therefore, in striking out the pleas as impertinent, and in refusing to receive evidence to support them.
Holding this opinion, we are not called upon to inquire whether the money received and disbursed by the collector, "as appearing by the official accounts filed by the plaintiff in the suit," was all money which it was his duty to receive and disburse as collector. And we are not to be understood as assenting to the claim that some part of it was not. On this subject see Broome v. The United States, 15 How. 143.
The next assignment of error requiring attention is, that the court refused to charge the jury, if they found from the evidence the Secretary of the Treasury required the collector to use the money received by him in the redemption of treasury notes, that such requirement was an important and material change of the duties, functions, and employment of the collector as required by law, and discharged the sureties in his official bond from all liability for his subsequent official misconduct.
Enough has already been said to show that such a charge should not have been given. By the act of 1799, to which we have referred, it was made the official duty of the collector to pay the public money in his hands to the order, or according to the direction of the officer authorized to direct the payment thereof. Payment of treasury notes, therefore, in pursuance *593 of the order of the Secretary, was directly in the line of the collector's duty as such an officer.
The same remarks are applicable to the refusal of the court to affirm the second point proposed by the defendant as instruction to the jury. It would have been error had such instruction been given. While it may be true that no law specifically imposed upon the collector the duty of making disbursements for any marine hospital, or for the light-houses or revenue-cutters, it is not true that such duties "were extra-official as to the office of collector," if the payments were ordered by the Secretary of the Treasury; for the collector was bound to pay to his order, as we have seen. Nor could the court have affirmed that money furnished to the collector from the treasury of the United States, or from sources other than the proper receipts and collections, must be shown by the plaintiff to have been necessary to cover the disbursements proper to the office of the collector, or that it was furnished for that purpose. As the law was when the bond was executed, the government was authorized to furnish money to collectors for certain purposes, on their requisition. But apart from this, when the proposition was submitted to the court, the treasury transcript was in evidence. By law it made out a prima facie case, and the burden of proof, instead of being upon the plaintiff, was on the defendant to disprove it. Besides, it was proven by the transcript, and by the accounts furnished to the department by the collector, that the money he had received from other sources than collection of customs had all been expended in the payment of debentures, with the sanction of the Treasury Department. To this there was no contradictory evidence. The point proposed by the defendant was, therefore, wholly inapplicable to the case.
The remaining assignment is that the court refused to affirm the third point in the words in which it was proposed. But the court did affirm it in substance, and even more broadly than it was presented. The court charged the jury, "that, in order to recover the balance brought down in the present action, it is incumbent on the government to prove, to the satisfaction of the jury, that the said balance brought down resulted from the failure of the said Barrett (the collector) to *594 account for the funds which came into his hands as collector, and within the scope of his official duties in that office, and his failure to perform his duty in respect to such funds, and not from his failure to account for funds received from the treasury for the extra-judicial purposes, and his failure to perform his duty in respect to such funds." This was an unqualified direction, not dependent upon what the jury might believe to be proved by the evidence. It was, therefore, more than the defendant asked.
The case requires nothing further. The plaintiff has recovered a judgment for the sum which the principal obligor in the bond admitted to be due from him as collector. The judgment includes nothing except an unpaid balance of duties collected, and we discover no error in the trial.
Judgment affirmed.
NOTES
[1] Supra, p. 585.