[Civil No. 337.   Filed June 22, 1896.]

[45 Pac. 341.]

FREDERICK W. SMITH et al., Defendants and Appellants, v. UNITED STATES OF AMERICA, Plaintiff and Appellee.

1. OFFICE AND OFFICERS—RECEIVER OF LAND OFFICE—BOND—RULINGS OF INTERIOR DEPARTMENT—NOT PART OF—CHANGE OF RULING—SURETIES—RELEASE OF.—It appears from the evidence that money misappropriated. by the receiver of public moneys in the Tucson

Land District was received by him for the sale of public lands, and for no other purpose. The ruling of the department of the interior in force at the time the defendant's bond was executed was, that payments before entry had been allowed and certificate given simply made the receiver of the land office the agent of the entryman, and were not public moneys. Subsequent thereto, and in view of such misappropriation, it was ruled that the moneys so paid were public moneys, and upon such later ruling the government issued patents to entrymen whose payments were misappropriated. *Held*, the former ruling was no part of the contract between the sureties upon the receiver's bond and the government, and that the moneys being in fact public moneys, a mere change in the ruling of the department as to what were public moneys did not release the sureties from their liability upon his bond.

2. LACHES — NOT ATTRIBUTABLE TO GOVERNMENT.— Laches is not attributable to the government.

3. OFFICES AND OFFICERS—BONDS—STATUTE FIXING AMOUNT—INCREASE BY EXECUTIVE OFFICER—VOLUNTARY BOND—DURESS.—Where the statute requires a bond of ten thousand dollars, a bond increased by the direction of the President of the United States to thirty thousand dollars, and voluntarily given, is not void as to the sureties on the ground of duress.

4. SAME—SAME—REFUSAL TO STOP PAYMENT ON DRAFT IN HANDS OF DEFAULTING OFFICER—RELEASE OF SURETIES.—The refusal of an inspector of the interior department to telegraph to the treasury department to stop payment upon a draft in the hands of a defaulting public officer, when requested by a surety upon such officer's bond so to do, does not prevent the government from recovering the full amount of the bond from such surety.

5. EVIDENCE—UNITED STATES TREASURER'S TRANSCRIPT—REV. STATS. U. S., SEC. 886, CITED.—The treasurer's transcript, duly certified under section 886, *supra*, was properly admitted as evidence of all things therein contained which came within the official knowledge of the accounting officers of the treasury department.

APPEAL from a judgment of the District Court of the First Judicial District. R. E. Sloan, Judge. Affirmed.

The facts are stated in the opinion.

W. H. Barnes, C. F. Ainsworth, and J. M. Martin, for Appellants.

The law and the rules of the department, in accordance with law and authorized by law to be made, are a part of the bond, and are as much a part of the contract as the writing itself.

The alteration of the contract, if the letter "M" is to be treated as making such moneys public moneys, changes the very nature of the contract, and was void as against the sureties. *United States* v. *De Viser*, 10 Fed. 642.

This was a bond for thirty thousand dollars, not required by any statute. It was demanded and required of Smith by executive order, and was extorted from him under duress, and as a condition upon which he should continue to hold the office. And hence the bond is void.

It was held in *Tingley* v. *United States*, 5 Pet. 115, that if a bond was demanded of the party under peril of losing his office, it was extorted under color of office against the requisites of the statute. It was plainly, then, an illegal bond, for no officer of the government has a right under color of his office to require from any subordinate officer as a condition for holding office that which is not required by law. That would be not to execute, but to supersede, the requisites of the law. *United States* v. *Humason*, 6 Saw. 199, Fed. Cas. No. 15,421; Murfree on Official Bonds, sec. 39; *United States* v. *Bradley*, 10 Pet. 343; *United States* v. *Lynn*, 15 Pet. 290. See, particularly, *State* v. *Finley*, 10 Ohio, 51.

Where a party has it in his power to prevent loss or injury to bondsmen or sureties of contracting parties, it is his duty to prevent it, and where the party has the means of satisfaction in his hands and does not choose to retain it, but suffers it to pass into the hands of the principal, the surety is discharged; and we contend that that rule applies to the government as well as to individuals. *Bellus* v. *Vanderslice*, 8 Serg. & R. 454; *Neff's Appeal*, 9 Watts & S. 36; *Taylor* v. *Lohman*, 74 Ind. 421; *Allen* v. *McDonnell*, 23 Fed. 573.

E. E. Ellinwood, United States District Attorney, for Appellee.

Sureties are liable for the discharge of the duties of the office by their principal, even where new duties are imposed by subsequent statutes, much less regulations, unless the duties of the office are so changed that the court can fairly call it a different office from that originally undertaken. *United States* v. *Gaussen*, 2 Wood, 92, Fed. Cas. No. 15,192; *United States* v. *Gaussen*, 97 U. S. 584.

In the case of *United States* v. *McCartney*, 1 Fed. 104, this

subject is considered at length, and the numerous authorities are reviewed. In its decision the court quotes the case of *White* v. *Fox*, 22 Me. 341, wherein it is said: "If the sureties of the official bond of persons holding offices created by law and the duties of which are prescribed by law were to be discharged by every change of the law relating to the duties, it would in these days of over-frequent change, be to little purpose to trouble officers to obtain sureties." *Illinois* v. *Ridgeway*, 12 Ill. 14; *Smith* v. *Peoria Co.*, 59 Ill. 412; *People* v. *Vilas*, 36 N. Y. 459, 93 Am. Dec. 520; *Mayor* v. *Morgan*, 12 B. Mon. 278; *Marney* v. *State*, 13 Mo. 7.

Sureties on an official bond are not exonerated by the laches of government agents in calling their principal to account. In the case of *United States* v. *Kirkpatrick*, 9 Wheat. 720, Justice Story says: "The supposition that laches will discharge the bond cannot be maintained as law. Laches is not imputable to the government, and this maxim is founded not in the notion of extraordinary prerogative, but upon great public policy. The government can transact its business only through its agents; and its fiscal operations are so various, and its agencies so numerous and scattered that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions."

That the exaction of a larger bond was not extortion, see *United States* v. *Bradley*, 10 Pet. 343; *United States* v. *Linn*, 15 Pet. 290; *United States* v. *Hodson*, 10 Wall. 395.

HAWKINS, J.—This was an action brought against Fred W. Smith and the sureties on his official bond as receiver of public moneys in the Tucson Land District, in this territory, dated the seventh day of March, 1888, for the sum of thirty thousand dollars, the condition of which is, that he "shall, at all times during his holding and remaining in said office, carefully discharge the duties thereof, and faithfully disburse all public moneys, and honestly account, without fraud or delay, for the same, and for all public funds and property which shall or may come into his hands." The government complained in its complaint that the bondsmen were liable for various and sundry sums which came into the hands of said receiver, aggregating over nineteen thousand dollars. At the

time, persons having made entry, and applying for final proof to obtain patents, they each handed to the receiver one dollar per acre, to be applied by him when final proof was passed upon by the government, if the proof was allowed, and to be returned to the entrymen if proof was disallowed. The receiver gave no receipt for the money. This seems to have been prohibited, yet there was also a rule of the department that "proof, without payment, must in no case be accepted." The moneys derived from this source amounted to about forty thousand dollars, in the hands of Smith when he went out of office. Of this money, about twenty-five thousand dollars was by Smith, through defendant Christy, returned to persons who had handed the same to Smith. This state of affairs is said to have been caused for the reason that, at the time so many persons were presenting their proofs and handing in their payments to Receiver Smith, there was no register, or Register Duff was in such ill health as to be unable to attend to the duties of his office. As a consequence, this vast amount of money was paid in to said receiver by persons desiring to enter land at the time of presenting their proof. This was the state of chaos in which Receiver Drake found the office when he took charge as receiver. A large number of persons who had presented proof to, and made payment to, Receiver Smith while in the charge of the said office, finding their proof accepted, made repayment to Receiver Drake. Then there were a number of cases where final proof had been made and presented to Smith while receiver, and in which entrymen, in accordance with regulations, had handed payment to Smith. At the time these cases were reached by the successor in office of Smith, and ready to be passed upon in favor of entrymen, for want of the money the officers of the land office were withholding patents, or final receipts, from the entrymen. This was done by the local land officers for the reason that the rulings of the general land office theretofore were that such payments, made before entry had been allowed and certificate given, simply made the receiver of the land office the agent of the entrymen, and were not public moneys. As stated, a number of persons under this regulation made repayment to Receiver Drake. Others, having made payment once to the agent of the government, and under the rule that "proof, without payment, must in no case be accepted," de-

manded their certificates. The state of affairs being reported
to the general land office, Acting Commissioner Stone changed
the former rulings of the general land office, as will be seen
by the following letter: "Letter 'M.' Department of the In-
terior, General Land Office. Washington, D. C., April 30,
1890. Register and Receiver, Tucson, Arizona—Sir. I in-
close herewith a statement, as taken from the records of your
office, showing the final proofs, now in your office awaiting
examination, on which the money in payment for the same
was paid to Fred W. Smith, the late receiver, and was by him
appropriated to his own use, and never accounted for to the
United States. You are instructed to examine all the final
proofs now in your office, as shown by the accompanying list;
and, if the same is found sufficient, you will request the
parties in interest to furnish an affidavit, properly attested,
showing that they did pay the money to Fred W. Smith, and
whether the same was paid by draft or check. If the parties
can furnish certified copies of these drafts or checks from the
cashier of the bank, showing the same, you will obtain these
copies and allow the entries as of date when proof and pay-
ment were made. You will refer on the entry papers and upon
your records to this letter, by initial and date, as your au-
thority therefor. The receiver will enter upon the books of
his office, under the account of Fred W. Smith, late receiver,
the amount of purchase money received for each class of
entry. You will give to said entries a half number corre-
sponding to the time when said proof was accepted, and pre-
pare supplemental abstracts of the same, noting thereon,
'Allowed by Letter "M" of April 30,' and purchase money
is to be charged to Fred W. Smith, the late receiver. You
will then prepare an account current form 4–105 thereof,
and certify therein that the transaction reported appears
from the records of your office. The receiver will send a
duplicate receipt to the entrymen in accordance with the in-
structions herein contained, noting on the receipt, as his
authority, this letter, by initial and date; and after you have
carefully examined all of these papers, as instructed in this
letter, you will forward them to this office for future con-
sideration. The decision of this office heretofore has been
against the allowance of an entry, where the money be payable
to the receiver of public moneys, if the moneys were not

properly accounted for, or deposited to the credit of the treasurer of the United States. But, as a matter of equity, in view of the general circular of this office, which provides that proof, without payment, must in no case be accepted or received by register and receiver, and in view of the fact that entrymen had made their payments in accordance with this circular issued by this office, it is the opinion of this office that the entries should be allowed. I am aware that the views herein expressed are in conflict with the practice above referred to, but my understanding of the law, and convictions of equity, are so strong and clear that, reluctant as I am to change the former practices, I feel myself compelled to do so in this case. I therefore hold that the moneys paid by entrymen to Fred W. Smith, receiver, and received by him in his official capacity as such, were public moneys, within the meaning and intent of the law, and the payment to him was a payment to the government. The recourse of the United States is under the official bond of Mr. Smith, and, as suit has already been instituted for the recovery of the amount received by him, the entries should be allowed without further delay. Very respectfully, WILLIAM STONE, Assistant Commissioner.''

The ruling contained in this letter seems to have been a complete change in the prior decisions and rulings of the department of the interior. See *Matthiessen* v. *Ward,* 6 L. D. Dep. Int. 714; *Lady Bryan Silver-Min. Co.,* 2 L. D. Dep. Int. 673; *In re Harris,* 8 L. D. Dep. Int. 77, 78. The appellants contend that these regulations, rulings, and decisions were the law when the bond was given, and a part of the contract between the sureties on the bond and the government. The court below held otherwise, and we think properly, as, notwithstanding the rules, the proof clearly shows, and it is practically admitted, that Smith received the sum for which judgment was entered, as receiver of public moneys at the Tucson land office, for the sale of public lands, and no other purpose. Smith admits this to Brown, the register, and exhibits to him (Brown) annotations made by himself on the final proof papers as they were received, charging himself with the amount so received in his official capacity. Could any one contend that if Smith had been in the office at the time these cases were reached and decided, and with these official

notations on the papers showing payment to him, the entry-
man would not be entitled to his certificate? If the entry-
man would be entitled to his certificate because the proof
had been found sufficient, and the payment found made when
the proof was presented, then, if the receiver failed to turn
the money into the treasury for such public lands sold, he is
liable upon his bond for same, and the sureties must be held.
The moneys thus received from entrymen were public moneys,
paid to and received by Smith as receiver, as the authorized
agent of the government, as a consideration for title to por-
tions of the public domain; and upon such payment the
government issued final receipts, accepting same as payment
for the land filed upon, and issued patents, thus parting with
its title.   This was done under the ruling of letter "M."
This was a new regulation, and, we think, is within the pro-
visions of section 161 of the Revised Statutes of the United
States, providing for a different rule of practice in the general
land office.  If not, it certainly correctly construes the law in
relation to payment of these moneys to Smith, receiver, and
the same being received by him in his official capacity, being
public funds, and that such payment to him by the entrymen
was a payment to the government.  Such change in the former
practice did not release the sureties.  Was Smith liable to the
government for this money received by him in his official
capacity?  No one, we think, would seriously contend that he
was not.  Then, how could the surety escape?  For it is an
elementary rule that a surety in a bond is liable to the same
extent to which his principal is liable, by force of the bond.
If, after an official bond has been signed, the nature of the
office be changed by law, the bond ceases to be obligatory, on
the theory that the office is no longer the same.  *Gaussen* v.
*United States*, 97 U. S. 584.  There is no pretense that there
was any change made in the duties of the office of receiver,
but the claim is that there was a change in the ruling of the
department which holds the sureties.  Suppose Congress had
passed a law saying that money paid by entrymen to receivers
when presenting their final proofs to registers and receivers
were public moneys, and this act had been passed after the
giving of the bond; this would not release sureties.  Mr.
Commissioner Stone simply overruled decisions and regula-
tions made by his predecessors.  He was authorized, as we

have stated, under section 161 of the Revised Statutes of the United States to change the rules and regulations of his department. If sureties on official bonds were discharged by every change in the law relating to the duties of the person holding office, it would be of little use to obtain sureties. *United States* v. *McCartney,* 1 Fed. 104, and numerous cases cited by the court in that decision. There seems to be a rule of the treasury department requiring receivers of public moneys to deposit whatever sums come into their hands to the credit of the United States with a United States depository, whenever the amount reaches one thousand dollars. It could hardly be contended that the failure of a receiver to comply with this rule would release the sureties. Laches is not attributable to the government. Mr. Justice Story, in *United States* v. *Kirkpatrick,* 9 Wheat. 720, uses the following language: "The supposition that laches will discharge the bond cannot be maintained as law. Laches is not imputable to the government, and this maxim is founded, not in the notion of extraordinary prerogative, but upon great public policy. The government can transact its business only through its agents, and its fiscal operations are so various, and its agencies so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions."

It is assigned as error, the admission of the bond of Smith and his sureties in evidence at the trial of the cause, for the reason that the statutes required a bond for ten thousand dollars, and the bond in question is for the sum of thirty thousand dollars, on a claim that the same was extorted from Smith under duress. The evidence in the case does not bear out this view. It shows that the bond was increased from ten thousand dollars to thirty thousand dollars by direction of the President of the United States, and sets out the letter of the secretary of the interior to that effect. It was unquestionably a voluntary bond, taken by the proper officers of the proper department of the government, and the right to take such a bond is an incident to the duties belonging to such department. *United States* v. *Tingley,* 5 Pet. 115; *United States* v. *Bradley,* 10 Pet. 343; *United States* v. *Hodson,* 10 Wall. 395.

It is also contended that the court below erred in permit-

ting the item of $1,692 to go to the jury for their considera-
tion, the same being charged against Smith for a draft of that
amount issued to Smith as receiver.   The reason of this al-
leged error is, that appellant Christy asked one McConnell,
an inspector of the interior department, on the 12th of Jan-
uary, 1890, to telegraph to the treasury department to stop
payment, and he refused to do so.   This draft appears to have
been issued to Receiver Smith on October 5, 1889, when he
was in office, and delivered to him by his clerk upon his
return from leave of absence, and Smith put the same in his
pocket.   We are unable to see any obligation upon the gov-
ernment to stop payment.   This was a negotiable instrument,
and had probably long before passed out of the hands of
Smith into other hands.   Besides the government could not be
bound by any statement or admission of Inspector McConnell.
His laches could not be imputed to the government.   *United
States* v. *Kirkpatrick,* 9 Wheat. 720.

The treasurer's transcript, duly certified under section 886
of the Revised Statutes of the United States, was properly ad-
mitted in evidence in the court below, and was, by virtue of
such statute, evidence of all things therein contained which
came within the official knowledge of the accounting officers
of the treasury department.   The judgment is affirmed.

Baker, C. J., Bethune, J., and Rouse, J., concur.